The next case on the docket is Jeremiah Banks v. Kathleen Allison, and this case is also set for 10 minutes per side, and so appellant gets to go first. Then again, if you want to make a rebuttal argument, try to stop before your full 10 minutes is up. Thank you, Your Honor. Good morning, and may it please the Court, Raj Shah for Petitioner Appellant Jeremiah Banks. I'd like to reserve three minutes for rebuttal, and I will keep an eye on the clock. Your Honors, this is a non-capital habeas matter that ultimately turns on the plain language of the Supreme Court's decision in Rines v. Weber. The District Court below denied Mr. Banks' motions for a Rines stay in abeyance, holding that he did not satisfy the first and third requirements for such stay in abeyance set forth in Rines. But the District Court failed to apply the correct legal standard on both of those requirements, and today I'd like to focus on the District Court's conclusion on the third requirement, which goes to whether Mr. Banks exhibited intentionally dilatory litigation tactics. Here, the District Court concluded that Mr. Banks could not satisfy the third exhaustion requirement because he was not diligent enough, that he didn't exhaust his state remedies quickly enough. But with respect, Your Honors, that's not what the third requirement looks to. The third requirement looks not to whether a petitioner was diligent, but rather whether he exhibited bad faith litigation tactics. Because the District Court failed to apply the correct legal standard, it engaged in an abuse of discretion in denying stay in abeyance that requires vacating and remanding for further proceedings on the merits of Mr. Banks' claims. Your Honor, Judge Gould, I'm sorry, I thought you said something. I'm sorry, Your Honor. I'd like to start by addressing what Rines' third requirement is ultimately about. The Supreme Court made clear in Rines the third requirement is focused on whether a petitioner exhibited bad faith litigation tactics. And we know this because in Rines itself, the Supreme Court created this requirement specifically to screen out capital habeas petitioners who might try to delay their execution dates, and in so doing, forestall the proceedings and delay them further. That's the rationale behind the third requirement in Rines. That's how we know that the third requirement is ultimately focused on whether a petitioner has exhibited bad faith in some way. Although the Supreme Court talked about the reasons for the rule that it was adopting, stay in abeyance if employed too frequently has the potential to undermine the various purposes of AEDPA, staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay resolution. So the Rines Court was certainly very concerned with the amount of time in addition to other factors. Is that fair? That's correct, Your Honor. And in fact, citing those very considerations, the Rines Court recommended that district courts, when adjudicating Rines motions, set clear time limits on petitioners for exhausting their state remedies. So for instance, I believe in Rines, the Supreme Court endorsed a Second Circuit opinion that set a reasonable time limit on a petitioner to go back to state court and exhaust his remedies. What I would note is that the magistrate judge in this case, alongside the district court, failed to impose any such time limit. Instead, both the magistrate judge and the district court spent about a year considering the Rines motion before ultimately denying it. Although the magistrate judge at the very beginning told petitioner that to the extent the petition includes any unexhausted claims, nothing presents him from immediately returning to state court to attempt to exhaust them. Well, with respect, Your Honor, I would disagree that that order was directed to Mr. Banks. That order was directed to the state. That order directed the state to respond to Mr. Banks's petition. The language Your Honor is citing appears in a footnote amidst a page of instructions for the state. And in fact, I can tell you where. It appears at 1 ER 36 at footnote 2. The Supreme Court has repeatedly cautioned federal courts not to try to trap pro se petitioners who are unsophisticated and unversed in law using trickery. And I'm not saying that this amounted to trickery, but to say that this placed Mr. Banks on notice of the idea that he needed to exhaust quickly, I believe asks a little too much of pro se petitioners. It asks a little too much to ask pro se petitioners to pay attention to footnotes in the middle of instructions for the state. Well, the state also on February 8th, ER 450, in fact, told your client sort of gratuitously that he may have some timeliness problems in state court and he's running out of time, but he has some time left to go file. So, I mean, that's an awfully strange thing. If the state is engaging in trickery here to say to your client, you know, you're in addition to your federal court problem, you may have a big state court problem and you still have an opportunity to cure it. I mean, is that a fair reading of what the state did? The state did alert Mr. Banks and the court to these procedural problems, but Mr. Banks then explained why he did not go back into state court to exhaust his remedies. And the explanation he gave does not show bad faith. Rather, it shows a simple good faith mistake. As he repeatedly told the district court, he believed that the inmate who was assisting him, an inmate by the name of Ingram, had already filed a petition in the California Court of Appeal and that the petition was already under consideration. You can find... He also told the court in response to the motion to dismiss that he wanted the state to allow for the introduction of additional evidence, as the state has pointed out. And as the magistrate judge and the district court, I think, also pointed out that that's one of the reasons he was delaying. That's the way they interpreted it. Is that a wrong interpretation? That is a wrong interpretation, Your Honor. And I would actually note that Mr. Mulford, in his answering brief, does not defend that interpretation, nor does the state ever defend that interpretation. I would argue that that is incorrect when we look at the sentence in context. And if I might, I'd like to read out that sentence. It appears at 2 ER 353 and reads as follows. Petitioners constructively filed requests for stay in abeyance should be granted so as to allow for the introduction of additional evidence to support petitioners' habeas claims. When read in context, that sentence is not saying that Mr. Banks wanted to delay the proceedings to find additional evidence. Rather, that sentence is saying that he should be allowed to exhaust his remedies so that additional evidence can be presented to the state courts in the exhaustion proceedings. Because all exhaustion proceedings involve introduction of new evidence. It's all about adding new evidence on post-conviction review to what the state courts have already considered on direct review. It's not the same thing as saying that Mr. Banks is deliberately delaying the proceedings in order to find new evidence. And if I can interrupt, so is it your position that once a petitioner files a federal petition and asks for a Ryan stay, the district court can consider whether the petitioner tried to exhaust the state, the claims in state court and in an expeditious way? Well, the court can consider it as part of Ryan's third requirement when deciding whether or not they engaged in bad faith litigation tactics. But I think the Supreme Court contemplated that exhaustion would actually occur after the Ryan stay was issued. That's why it endorsed district courts who set reasonable time limits on exhaustion proceedings after granting stay in abeyance. So while courts can consider it, the Supreme Court made clear in Ryan's that that's not the ordinary order of operations. The stay should come first and then the petitioner should be given a clear opportunity with deadlines to exhaust his state remedies. But suppose there was a six, seven, eight, nine month delay because district courts are busy, you know, you go to ED Cal, they're incredibly busy. I mean, is it incumbent on the petitioner to say, look, gee, my petition hasn't been, you know, hearing hasn't been said, nothing's acting. Maybe I should go to state court and exhaust like my unexhausted claims. It would be. And your honor, I think the district court could certainly consider that when assessing Ryan's third requirement. It could consider whether the petitioner is acting in bad faith if he's taking too long to go back to state court. But here there is no evidence of bad faith. Although there was certainly a delay, Mr. Banks explained why that delay occurred. He explained that he made a reasonable good faith mistake in trusting Mr. Ingram to file the petition on his behalf. And while we might argue about whether Mr. Banks was diligent or whether he was negligent or whether that was a reasonable course of action for him, what we can't say from this record is that Mr. Banks was acting in bad faith and intentionally trying to delay the proceedings, which as the Supreme Court has noted is entirely what that third requirement is all about. Your honors, I see I'm rapidly running out of time and would like to preserve anything else for rebuttal unless the court has any further questions at this time. I have no questions. Thank you, your honors. For those reasons, we would ask the court vacate and remand. Matthew Mulford on behalf of the state. May it please the court. Disagrees with several things counsel has said. One regarding what Ryan says and one regarding the nature of the order to show cause. They gave the instructions about exhaustion in state court and finally disagree why anything regarding exhaustion matters due to the excessive delay that means all the claims are now procedurally defaulted. We'll start with Ryan's. I disagreed that the words bad faith show up anywhere in I think counsel wants the standard of a three justice concurrence to be the holding of the court. Counsel keeps focusing on how Mr. Banks was not intentionally dilatory or had bad faith. The right standard is not that narrow. It includes abusive litigation tactics. The majority of the court rejected the narrow interpretation presented by Mr. Shaw. So, when we look at the district court dismissing Mr. Banks' federal petition because of a 15-month delay in failing to exhaust, that has to be abusive litigation tactics within the meaning of Ryan's. Ryan's also says, I think going to your point, and if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. Yes, I agree. And that is absolutely clear on the date of the dismissal of the petition. We also think, state thinks that Mr. Banks can't show meritorious claims and after the fact does not have good cause for his delay. So, on the day he filed, he has good cause for delay under this court's decision in Dixon versus Baker because he lacked counsel to present his first initial review collateral proceeding in state court. And the district court so found. I think that's fair, yes. The district court is responding to objections and other things that have happened in the meantime, but yeah, I think that's a fair reading of the district court's. So, we think counsel's wrong regarding what Ryan says. If I can ask a question here. Yes. Once Mr. Banks filed his federal petition, asked for a Ryan's stay, and should we look at the first factor, good cause? Should we look at the third factor, the dilatory tactics, or does it matter? Which prong should we look at in determining, you know, how long he took to go exhaust in state court? There are three factors. I think we can look at them all, and the court certainly has discretion to consider them all. So, the magistrate judge issued an order for further proceedings in the district court, and some of that was directed to the state. We filed the motion to dismiss in compliance with that order, and some of it was directed to Mr. Banks. And so, the notion that Mr. Banks is not reading this order is incorrect, or I think is overstating the mark by quite a bit. Well, the first line of that order says the parties to this action are directed to read this order carefully. Yes, I agree. That's how we read it. We do our best. I have missed things in orders like that before, but in this case, I think everybody read it and understood it. Once Mr. Rines filed his request for a Rines stay, how long is too long before he has to go exhaust his state law claims? Presumably, at least 30 to 60 days is okay, because typically, in district court orders, when they grant the stay, they say 30 to 60 days. So, how do we determine how long is too long before, you know, a petitioner has to go to state court to exhaust his claims? In the state's view, he was already too late, all right? So, the exhaustion and procedural default work fist in glove sometimes, right? And so, occasionally, you are exhausted only to the extent that you have a state court remedy that's available. Waiting too long is, you know, one of the big examples of taking your state court remedy away. So, Mr. Rines was right on the edge when he filed. So, the question as to how do we evaluate it, it's a tough one. And California sometimes makes it difficult because there are no time limits that prevent a filing ever. Now, that's a rule that usually works the petitioner's advantage because they can always ask for relief or say, here's what's going on, please excuse my circumstances. But it cannot go forward. So, this grace period, what we're talking about here, it cannot go further than the statute of limitations, the one-year federal statute of limitations because that's what's motivating Rines. So, Mr. Banks is barely okay the day he files his federal petition because he's only got about six weeks left on his federal statute of limitations. Once that's over, it's his burden to get everything done. Rines does not overrule the statute 2254B that requires exhaustion. Rines does not overrule Rose versus Lundy, which says that pro se petitioners must exhaust. So, how long is too long? Well, up until the statute of limitation, there's lots of wiggle room. After that, very little. Yeah, counsel, am I reading your answering brief correctly where part of your argument is that in light of the Supreme Court of California's 426-23 denial without explanation, but also taking a look at the 117-23 Court of Appeal decision that all of the claims are procedurally defaulted, that we should skip right to that and not even look at the issues that petitioner raised in the opening brief and just say, these are all procedurally defaulted and so there's no there, there affirmed? That's what we've argued and that's what we believe. We're prepared to defend the district court's judgment on whatever grounds the court is considering. So, how would you address your friend's argument that that to proceed on those grounds would be totally unfair since they never had any opportunity at all in the district court to address this since obviously everything happened before the Court of Appeal and the Supreme Court of California had ruled? Why isn't that correct that it would be totally unfair for us to reach that? This case is about exhaustion. The petitioner bears the burden of demonstrating exhaustion before he files in the district court. So, the only reason we're talking about things that happened after the fact is that Mr. Banks failed to exhaust when he should have. So, the unfairness is solely of his own making, if there is any, and we disagree that there is any unfairness. There's no there, there because when he finally did the thing that he asked for, the stay to exhaust, when he finally went back to state court and exhaust, the state court told him you're years too late, which is what we predicted the state would be telling him when we filed our motion to dismiss before the statute of limitations had run. The district court functionally gave him the stay. Now, they didn't say you have to stay, you must do all these things, but those things are all implicit in the exhaustion requirement. They're all implicit based on a one-year statute of limitations, all of which he said he knew in the district court while he was telling the district court that he was doing exhaustion proceedings that were not in fact true. So, coming back to Rines, if abusive litigation tactics means anything, it has to include the sort of recklessness that Mr. Banks was demonstrating in the district court. So, on appeal, yes, the district court dismissed the case properly. There's no reason to do anything else because after the district court dismissed the case properly, we know from the state court that it's all procedurally defaulted for the same type of timeliness reasons we told them about initially. We're happy to consider, you know, inmates bringing their claims. You know, I'm innocent, bring your evidence, consider it. We would prefer to consider it one and only one time. And so, in the district court, he said, here's what you need to do to perfect your claims. We'll be happy to consider him, and he never did. Today, he's saying, oh, that was an error, and we disagree, and it really doesn't matter because he took even longer after that. We think the judgment should be affirmed either on procedural default, which is absolutely fair, or on exhaustion, as the district court ruled. All the records are Mr. Banks's records. I see I'm running out of time. I'll be happy to address further questions. Yeah, I have no question. I don't know about it. No, thank you. Thank you. Please affirm. Thank you. The Banks case shall now be rebuttal. I guess, yeah, I guess a minute of rebuttal. Thank you, Your Honor. Just two quick points to bring the discussion back to what Ryan's actually required. Judge Bennett, you noted that Ryan states regarding the third requirement, the standard is whether the petitioner engaged in abusive tactics or intentional delay. I would submit that that standard requires some kind of intentional action. Otherwise, the term abusive tactics or intentional delay would not have any meaning. So, what we need to look for here is intentional action of some kind. And here, as Mr. Mulford himself said, there's been no, he seems to think that it's recklessness, but that concedes that there is no intentional action here. That's why Mr. Banks can clear Ryan's third requirement and why the district court erred in holding otherwise. For those reasons, we would ask this court vacate and remand. Thank you. Thank you. Thanks, counsel. So, I want to thank counsel on both sides for their excellent arguments and their flexibility in helping us hear these cases with remote argument in light of the tragic circumstances in the Pasadena area. This case shall now be submitted and parties will hear from us in due course. Thank you.
judges: GOULD, BENNETT, LEE